<u>**NOT FOR PUBLICATION**</u>

**CLOSED**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| MUSA SHIHADEH, | : | |
| | : | Civil Action No. 06-161 (JLL) |
| Plaintiff, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| CATHERINE FANTUZZI, et al., | : | |
| | : | |
| Defendants. | : | |

**APPEARANCES:**

MUSA SHIHADEH, Plaintiff <u>pro se</u>
#68324/436729A
Bayside State Prison
P.O. Box F-1
Leesburg, New Jersey 08327

**LINARES**, District Judge

Plaintiff Musa Shihadeh ("Shihadeh"), a state prisoner confined at the Bayside State Prison in Leesburg, New Jersey, at the time he submitted this Complaint for filing, seeks to bring this civil rights action <u>in forma pauperis</u> under 28 U.S.C. § 1915(a). Based on his affidavit of indigence and current absence of three qualifying dismissals within 28 U.S.C. § 1915(g), the Court will grant Shihadeh's application to proceed <u>in forma pauperis</u> pursuant to 28 U.S.C. § 1915(a) and order the Clerk of the Court to file the Complaint.

At this time, the Court must review the Complaint to determine whether it should be dismissed as frivolous or

malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief.  For the reasons stated below, the Court finds that the Complaint should be dismissed.

## I.  BACKGROUND

The following factual allegations are taken from the Complaint and are accepted as true for purposes of this review.

Shihadeh alleges that, in March 1973, he was arrested and charged with the murder of his business partner, Marvin Weinberger.  He spent one night in jail.  The next day, Shihadeh alleges that he was brought before the Grand Jury and was then released from custody.  The Grand Jury returned a no-bill indictment.  (Complaint, ¶¶ 1-6)

Five months later, in August or September 1973, Shihadeh was arrested a second time for the murder of Marvin Weinberger.  At the time, Shihadeh was en route to Kuwait with a stop over in Rome, Italy International Airport.  Shihadeh's business associate, Harold Guzy, called plaintiff at the airport and informed plaintiff that Weinberger's body had been found and detectives from the Bergen County Prosecutor's Office wanted to talk to Shihadeh.  Shihadeh returned to the United States.  He again testified before the Grand Jury.  The Bergen County Grand Jury did not issue an indictment against plaintiff for lack of evidence.  (Compl., ¶¶ 7-14).

Shihadeh claims that he returned to Kuwait to complete the business deal he had initially set out to transact before he was asked to return to the United States.  However, the business deal fell through because of plaintiff's arrest.  (Compl., ¶¶ 16-17).

In his next claim, Shihadeh alleges that, on his second arrest in 1973, the Bergen County detectives had surrounded plaintiff's home at 3:00 a.m. and entered his house with automatic weapons drawn.  The detectives told plaintiff's wife to walk slowly to the room where Shihadeh was resting.  Shihadeh allege that the detectives used his wife as a shield in case there was a shoot-out with plaintiff.  (Compl., ¶¶ 18-21).

Shihadeh was taken to jail.  He was given his Miranda rights and the detectives told plaintiff that they had a statement from a witness, Joseph DeMarco, which accused plaintiff of the murder of Marvin Weinberger.  The detectives told plaintiff he should "cut a deal" with them.  Shihadeh remained in jail for six days after bail was set at $100,000.00.  He retained counsel and Shihadeh's wife bailed him out of jail after six days.  At that time, the detectives informed plaintiff that his life was in danger and summoned the judge who had initially set bail to keep Shihadeh confined.  The judge denied the State's request and bail was reinstated.  (Compl., ¶¶ 22-33).

The detectives then told plaintiff that they had another witness, "Sharky" Tambouri, who admitted that Shihadeh paid

Tambouri and DeMarco to kill Weinberger.  Shihadeh asserts that
this accusation was false and was made by Tambouri, a "known
career criminal", so that Tambouri could cut a deal with the
detectives.  Several weeks after plaintiff was released on bail,
he learned that Tambouri had suddenly died of a heart attack.
The case against Shihadeh was dismissed for a second time based
on lack of evidence.  (Compl., ¶¶ 34-37).

Shihadeh is currently in prison serving a life sentence for
a 1982 murder conviction.  The murder conviction apparently is
not related to the murder of Marvin Weinberger.  Shihadeh alleges
that during his incarceration, in May 2005, he underwent surgery
for prostate cancer.  After surgery, he was returned to the
infirmary at Northern State Prison ("NSP"), and on May 23, 2005,
plaintiff was returned to the general population at NSP.
Shihadeh states that he stayed in his cell most of the time
because he was still weak from his cancer operation.  However, on
May 24, 2005, Shihadeh went to the recreation area to telephone
his business associate, Lorraine Cartwright.  Plaintiff was
unable to place the call himself because his Pin-Caller ID was
not in order at NSP.  Another inmate volunteered to make the call
for him in exchange for $25.00 to be sent to the inmate's father.
The inmate never did place the call for Shihadeh.  (Compl., ¶¶
38-50).

4

The next day, on May 25, 2005, Shihadeh had a conversation with the inmate and others about legal problems they were having with respect to parole.  Shihadeh told the inmate that he was eligible for parole in six months and had filed an Executive Clemency application for his release.  The inmate told plaintiff that he could "pull some strings" to get plaintiff out on parole because the inmate had a strong contact with a an attorney whose ex-wife was a state court judge.  The inmate suggested that plaintiff pay him $10,000.00 in exchange for the inmate contacting the attorney on plaintiff's behalf.  Shihadeh agreed.  However, plaintiff was transferred to Bayside State Prison ("BSP") on May 26, 2005.  (Compl., ¶¶ 51-58).

While at BSP, Shihadeh called his business associate, Lorraine Cartwright, and learned that the inmate never contacted her for plaintiff.  He also learned that the inmate wrote to Ms. Cartwright and asked her to send the inmate a certain law book costing $95.00 plus postage fees, which she did.  Ms. Cartwright also sent this inmate a copy of Shihadeh's Clemency Application, which had information about plaintiff's prior arrest and eventual dismissal of charges for the murder of Marvin Weinberger.  Apparently, the inmate was a confidential informant, and it is alleged by Shihadeh that the information in his clemency application made its way to the Bergen County Prosecutor's Office.  The inmate informant had charges pending in Bergen and

5

Passaic County and was trying to "curry favor" with the prosecutor to get these charges dismissed.  Thus, the Bergen County Prosecutor's Office re-opened their investigation against Shihadeh for the murder of Weinberger.  (Compl., ¶¶ 59-66).

The inmate informant continued to press Shihadeh for money to help plaintiff with his parole request.  He also asked plaintiff for money to purchase law books.  The inmate told plaintiff to send the money to an address in Clifton, New Jersey rather than the attorney's office in Morristown.  (Compl., ¶¶ 67-70).

On September 20, 2005, detectives Mark Bendul and James J. Bordino came to BSP to interview Shihadeh about the murder of Weinberger.  Shihadeh complains that the detectives interviewed him without regard to plaintiff's <u>Miranda</u> rights.  Shihadeh told the detectives that he wanted counsel present while being questioned.  They then threatened to have Shihadeh's son arrested for loitering in Atlanta, Georgia, and to make it hard for plaintiff to get parole.  The detectives pushed plaintiff back into his chair when Shihadeh got up to leave.  They told Shihadeh that they had informed an investigator for the New Jersey Clemency Board that Shihadeh was under investigation for Weinberger' murder.  (Compl., ¶¶ 71-82).

On September 23, 2005, Detective Bendul and a John Doe detective returned to BSP to interview plaintiff again.  Shihadeh

told them he was represented by counsel who advised plaintiff not to discuss anything with the detectives without counsel present. The detectives forced plaintiff to remain in his chair during the interview knowing that plaintiff was not feeling well because of a bladder and kidney infection and slow recovery from prostate cancer surgery.  Shihadeh complained to the detectives about his poor health and need for medication, but they continued to interview him until plaintiff almost passed out.  Plaintiff contends that the detectives' conduct was tortuous and unprofessional.  (Compl., 83-91).

In October 2005, Shihadeh learned that Detectives Bendul and Bordino went to California to interview plaintiff's ex-wife, Donna Nall, about the murder of Marvin Weinberger.  The interview lasted three hours until late in the evening, and plaintiff's young son was trembling in fear, crying, and could not study for his school exams.  Ms. Nall said that she did not believe anything the detectives told her about Shihadeh.  Shihadeh complains that this conduct by the detectives was cruel and unusual punishment, considering his ex-wife's nervous breakdown in 1973 after plaintiff's earlier false arrest.  (Compl., ¶¶ 92-101).

Shihadeh contends that the defendants, Detectives Mark Bendul, James J. Bordino, and John Doe, and Assistant Prosecutor Catherine Fantuzzi, worked in concert to deprive plaintiff of his

right to due process by charging plaintiff three times for the murder of Marvin Weinberger.  Plaintiff asserts official misconduct by the detectives in their tactics to get plaintiff to confess to the murder of Marvin Weinberger.  He further claims that the re-opening of the case for the third time is not only arbitrary and capricious, but a miscarriage of justice.  Finally, he contends that defendant Fantuzzi is withholding evidence sought by plaintiff's counsel in discovery in connection with this third investigation and charge against Shihadeh for the murder of Weinberger.  (Compl., ¶¶ 102-109).

Shihadeh seeks compensatory damages with respect to money lost regarding the Kuwaiti business trip.  He also seeks injunctive relief dismissing all charges against him for the murder of Weinberger, and enjoining further investigation by the Bergen County Prosecutor's Office.  Finally, plaintiff asks that a letter be sent to the Clemency Investigator and the Parole Board informing them that there are no charges pending against plaintiff.

II.  <u>STANDARDS FOR A SUA SPONTE DISMISSAL</u>

The Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996), requires a district court to review a complaint in a civil action in which a prisoner is proceeding <u>in forma pauperis</u> or seeks redress against a governmental employee or entity.  The Court is

required to identify cognizable claims and to <u>sua sponte</u> dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. §§ 1915(e)(2)(B) and 1915A.[1]

In determining the sufficiency of a <u>pro se</u> complaint, the Court must be mindful to construe it liberally in favor of the plaintiff.  <u>Haines v. Kerner</u>, 404 U.S. 519, 520-21 (1972); <u>United States v. Day</u>, 969 F.2d 39, 42 (3d Cir. 1992).  The Court must assume the truth of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff.  <u>Gibson v. Superintendent of N.J. Dep't of Law & Pub. Safety-Division</u>, 411 F.3d 427, 431 (3d Cir. 2005).  The Court need not, however, credit a <u>pro se</u> plaintiff's "bald assertions" or "legal conclusions."  <u>Id.</u>

A complaint is frivolous if it "lacks an arguable basis either in law or in fact."  <u>Neitzke v. Williams</u>, 490 U.S. 319,

---

[1]  Shihadeh should also be aware that the PLRA requires Courts to determine whether a prisoner has, on three or more prior occasions while incarcerated or detained in any facility, brought an action or appeal in federal court that was dismissed as frivolous, malicious, or for failure to state a claim upon which relief may be granted.  If so, the prisoner is precluded from bringing an action <u>in forma pauperis</u> unless he or she is under imminent danger of serious physical injury.  28 U.S.C. § 1915(g).  It does not appear that Shihadeh has filed any lawsuits which were dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A, at this time.

325 (1989) (interpreting the predecessor of § 1915(e)(2), the former § 1915(d)).  The standard for evaluating whether a complaint is "frivolous" is an objective one.  Deutsch v. United States, 67 F.3d 1080, 1086-87 (3d Cir. 1995).

A pro se complaint may be dismissed for failure to state a claim only if it appears "'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"  Haines, 404 U.S. at 521 (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)); Milhouse v. Carlson, 652 F.2d 371, 373 (3d Cir. 1981).  However, where a complaint can be remedied by an amendment, a district court may not dismiss the complaint with prejudice, but must permit the amendment.  Denton v. Hernandez, 504 U.S. 25, 34 (1992); Alston v. Parker, 363 F.3d 229 (3d Cir. 2004)(complaint that satisfied notice pleading requirement that it contain short, plain statement of the claim but lacked sufficient detail to function as a guide to discovery was not required to be dismissed for failure to state a claim; district court should permit a curative amendment before dismissing a complaint, unless an amendment would be futile or inequitable); Grayson v. Mayview State Hospital, 293 F.3d 103, 108 (3d Cir. 2002) (dismissal pursuant to 28 U.S.C. § 1915(e)(2)); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000) (dismissal pursuant to 42 U.S.C. § 1997e(c)(1)); Urrutia v. Harrisburg County Police Dept., 91 F.3d 451, 453 (3d Cir. 1996).

A complaint that sets forth facts which affirmatively demonstrate that the plaintiff has no right to recover is properly dismissed without leave to amend.  <u>Grayson</u>, 293 F.3d at 106.

### III.  <u>SECTION 1983 LIABILITY</u>

Shihadeh brings this action pursuant to 42 U.S.C. § 1983 alleging violations of his constitutional rights.  Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law.  <u>West v. Atkins</u>, 487 U.S. 42, 48 (1988); <u>Piecknick v. Pennsylvania</u>, 36 F.3d 1250, 1255-56 (3d Cir. 1994).  Here, there appears to be no question that the named defendants are persons acting under color of state law.

### IV.  <u>ANALYSIS</u>

Construing the allegations of the Complaint most liberally for the <u>pro</u> <u>se</u> plaintiff, the Court finds that the Complaint alleges the following claims: (1) false arrest and imprisonment;

11

(2) malicious prosecution; (3) coercive interrogation in violation of plaintiff's due process rights; and (4) prosecutorial misconduct in failing to provide discovery.

A.  <u>False Arrest Claims</u>

It appears from the Complaint that Shihadeh is alleging that he was twice falsely arrested in 1973 for the murder of Marvin Weinberger, and each time the charges were dropped after a no-bill indictment by the Grand Jury.  It is well established in the Third Circuit that an arrest without probable cause is a constitutional violation actionable under § 1983.  <u>See</u> <u>Walmsley v. Philadelphia</u>, 872 F.2d 546 (3d Cir. 1989)(citing cases); <u>see also</u>, <u>Albright v. Oliver</u>, 510 U.S. 266, 274 (1994)(a section 1983 claim for false arrest may be based upon an individual's Fourth Amendment right to be free from unreasonable seizures).  To state a claim for false arrest, a plaintiff must allege two elements: (1) that there was an arrest; and (2) that the arrest was made without probable cause.  <u>Dowling v. City of Philadelphia</u>, 855 F.2d 136, 141 (3d Cir. 1988).  Thus, a defense to an unlawful arrest claim is that the police officer defendants acted with probable cause.  <u>Sharrar v. Felsing</u>, 128 F.3d 810, 817-18 (3d Cir. 1997)(a key element of a § 1983 unlawful arrest claim is that the police officer arrested the plaintiff without probable cause); <u>Groman</u>, 47 F.3d at 636 ("an arrest based on probable cause could not become the source of a [§ 1983] claim for false

imprisonment"). To establish the absence of probable cause, a plaintiff must show "that at the time when the defendant put the proceedings in motion the circumstances were such as not to warrant an ordinary prudent individual in believing that an offense had been committed." Lind v. Schmid, 67 N.J. 255, 262 (1975). "Probable cause . . . requires more than mere suspicion; however, it does not require that the officer have evidence to prove guilt beyond a reasonable doubt." Orsatti v. New Jersey State Police, 71 F.3d 480, 482-83 (3d Cir. 1995). Rather, probable cause exists when the facts and circumstances are "sufficient to warrant a prudent man in believing that the defendant had committed or was committing an offense." Gerstein v. Pugh, 420 U.S. 103, 111 (1975) (quoting Beck v. State of Ohio, 379 U.S. 89, 91 (1964)); Sharrar v. Felsing, 128 F.3d 810, 817 (3d Cir. 1997).[2]

Here, the Complaint indicates that Shihadeh was arrested and taken into police custody on two occasions in 1973 for the murder of Weinberger. Each time, plaintiff was quickly released in a matter of a day or several days for lack of evidence. Charges were soon dropped after the Grand Jury declined to indict plaintiff on the charges. While plaintiff does not expressly

---

[2] A grand jury indictment is affirmative evidence of probable cause sufficient to defeat claims for malicious prosecution and false arrest under § 1983. Gatter v. Zappile, 67 F. Supp. 2d 515, 519 (E.D.Pa. 1999), aff'd, 225 F.3d 648 (3d Cir. 2000).

allege a lack of probable cause for his 1973 arrests, other than a later finding of no-bill on the charges, it is possible that plaintiff could establish a claim for false arrest.

However, the Court finds that any false arrest claim asserted by Shihadeh is now time-barred.  A court may dismiss a complaint for failure to state a claim, based on a time-bar, where "the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations."  Bethel v. Jendoco Construction Corp., 570 F.2d 1168, 1174 (3d Cir. 1978) (citation omitted).  Although the statute of limitations is an affirmative defense which may be waived by the defendant, it is appropriate to dismiss sua sponte under 28 U.S.C. § 1915(e)(2) a pro se civil rights claim whose untimeliness is apparent from the face of the Complaint.  See, e.g., Pino v. Ryan, 49 F.3d 51, 53 (2d Cir. 1995) (holding, under former § 1915(d) in forma pauperis provisions, that sua sponte dismissal prior to service of an untimely claim is appropriate since such a claim "is based on an indisputably meritless legal theory"); Hall v. Geary County Bd. of County Comm'rs, 2001 WL 694082 (10th Cir. June 12, 2001) (unpub.) (applying Pino to current § 1915(e)); Rounds v. Baker, 141 F.3d 1170 (8th Cir. 1998)(unpub.); Johnstone v. United States, 980 F.Supp. 148 (E.D. Pa. 1997) (applying Pino to current § 1915(e)).  The requirements of 28 U.S.C. § 1915A (governing civil actions in which a prisoner

seeks redress from a governmental entity or officer or employee
of a governmental entity) and 42 U.S.C. § 1997e (governing
actions brought with respect to prison conditions) that federal
courts review and dismiss any complaint that fails to state a
claim parallels the provision in 28 U.S.C. § 1915(e).

Civil rights claims, such as that presented here, are best
characterized as personal injury actions and are governed by the
applicable state's statute of limitations for personal injury
actions.  See Wilson v. Garcia, 471 U.S. 261, 280 (1985).
Accordingly, New Jersey's two-year limitations period on personal
injury actions, N.J. Stat. Ann. § 2A:14-2, governs Shihadeh's
claims.  See Montgomery v. DeSimone, 159 F.3d 120, 126 & n.4 (3d
Cir. 1998); Cito v. Bridgewater Township Police Dept., 892 F.2d
23, 25 (3d Cir. 1989).  Under N.J. Stat. Ann. § 2A:14-2, an
action for an injury to the person caused by a wrongful act,
neglect, or default must be commenced within two years of accrual
of the cause of action.  Cito, 892 F.2d at 25; accord Brown v.
Foley, 810 F.2d 55, 56 (3d Cir. 1987).  Unless their full
application would defeat the goals of the federal statute at
issue, courts should not unravel states' interrelated limitations
provisions regarding tolling, revival, and questions of
application.  Wilson v. Garcia, 471 U.S. at 269.

New Jersey statutes set forth certain bases for "statutory
tolling."  See, e.g., N.J.S.A. § 2A:14-21 (detailing tolling

because of minority or insanity); N.J.S.A. § 2A 14-22 (detailing tolling because of nonresidency of persons liable). New Jersey law permits "equitable tolling" where "the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass," or where a plaintiff has "in some extraordinary way" been prevented from asserting his rights, or where a plaintiff has timely asserted his rights mistakenly by either defective pleading or in the wrong forum. See Freeman v. State, 347 N.J. Super. 11, 31 (citations omitted), certif. denied, 172 N.J. 178 (2002). "However, absent a showing of intentional inducement or trickery by a defendant, the doctrine of equitable tolling should be applied sparingly and only in the rare situation where it is demanded by sound legal principles as well as the interests of justice." Id.

When state tolling rules contradict federal law or policy, in certain limited circumstances, federal courts can turn to federal tolling doctrine. See Lake v. Arnold, 232 F.3d 360, 370 (3d Cir. 2000). Under federal law, equitable tolling is appropriate in three general scenarios:

> (1) where a defendant actively misleads a plaintiff with respect to her cause of action; (2) where the plaintiff has been prevented from asserting her claim as a result of other extraordinary circumstances; or (3) where the plaintiff asserts her claims in a timely manner but has done so in the wrong forum.

Id. n.9.

16

A § 1983 claim for false arrest, as alleged by Shihadeh in this case, typically accrues on the date of the plaintiff's arrest.  See Montgomery v. De Simone, 159 F.3d 120, 126 (3d Cir. 1998); Rose v. Bartle, 871 F.2d 331, 348-51 (3d Cir. 1989).  Here, Shihadeh was arrested in March and September 1973; therefore, his § 1983 claims for false arrest accrued at that time, making this action untimely.[3]  Shihadeh's Complaint is dated on or about December 13, 2005, and was received by the Clerk's Office on or about January 12, 2006, more than thirty years after the arrests took place and charges were dismissed.  Shihadeh alleges no facts or extraordinary circumstances that would permit statutory or equitable tolling under either New Jersey or federal law.[4]  Thus, the false arrest claims for the

---

[3] A claim accrues as soon as the injured party "knew or had reason to know of the injury that constitutes the basis of this action."  Oshiver v. Levin Fishbein, Sedran & Berman, 38 F.3d 1380, 1385 (3d Cir. 1994).  "Plaintiff's actual knowledge is irrelevant.  Rather, the question is whether the knowledge was known, or through reasonable diligence, knowable.  Moreover, the claim accrues upon knowledge of the actual injury, not that the injury constitutes a legal wrong."  Fassnacht v. United States, 1996 WL 41621 (E.D. Pa. Feb. 2, 1996) (citing Oshiver, 38 F.3d at 1386).

[4] The Court acknowledges that Shihadeh may be alleging that the limitations period is tolled for the 1973 arrests under the "continuing wrong" or "continuing violations" doctrine, based on the re-opening of the murder case in mid-2005.  "Under this doctrine, a federal cause of action based upon the defendant's continuing conduct is timely provided that the last act of that continuing conduct is within the period for the commencement of an action specified by the statute of limitations."  Sameric Corp. of Delaware, Inc. v. City of Philadelphia, 142 F.3d 582, 599 (3d Cir. 1998).  Here, however, there is a vast

17

1973 incidents are time-barred and will be dismissed with prejudice.

Shihadeh also appears to be asserting a claim of false arrest with respect to the 2005 investigation.  He states that he has been charged with Weinberger's murder yet a third time, without evidence to support such a charge.  However, Shihadeh was already imprisoned for another murder, and is currently serving the sentence imposed for that crime.  Thus, plaintiff cannot show any actual injury with respect to a seizure and imprisonment related to the third investigation of the Weinberger murder.

Moreover, to the extent that plaintiff is claiming that no probable cause exists for the charge, he is challenging a finding of probable cause, a defense which must first be raised in his ongoing state criminal proceedings.  A federal court generally will not intercede to consider issues that plaintiff has an opportunity to raise before the state court.  See Younger v. Harris, 401 U.S. 37 (1971).  It is not typically the role of the federal courts to interfere in pending state criminal cases.  The United States Court of Appeals for the Third Circuit has enunciated three requirements that must be met before Younger abstention may be invoked:

---

separation in time between the arrests in 1973 and the re-opening of the murder investigation in 2005.  The difference in time (more than 30 years) is too substantial to constitute a continuing wrong.  With such a substantial break in time, there is no continuing conduct to toll the limitations period.

18

(1) there are ongoing state proceedings that are judicial in nature;  (2) the state proceedings implicate important state interests;  and (3) the state proceedings afford an adequate opportunity to raise federal claims.  Whenever all three of these requirements are satisfied, abstention is appropriate absent a showing of bad faith prosecution, harassment, or a patently unconstitutional rule that will cause irreparable injury to the plaintiff.

Port Auth. Police Benevolent Ass'n v. Port Auth. of New York and New Jersey Police Dept., 973 F.2d 169, 173 (3d Cir. 1992) (citing Schall v. Joyce, 885 F.2d 101, 106 (3d Cir.1989)).  In this case, Shihadeh states that there is an ongoing state proceeding against him with respect to the Weinberger murder. Thus, the Court finds that this ongoing state criminal proceeding implicates important state interests, and that Shihadeh, through his counsel, has an opportunity to raise his challenge to the arrest or imposition of charges in a hearing during that proceeding.  Therefore, because Shihadeh has not yet been convicted, this Court is constrained by Younger to dismiss the 2005 false arrest and imprisonment claim for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

Moreover, Shihadeh is not seeking any damages with respect to the 2005 false arrest claim.  Rather, he is asking that the charges be dismissed.  Thus, to the extent that Shihadeh seeks a dismissal of the charges, his § 1983 false arrest claim must be dismissed.  The appropriate avenue for this type of relief is

19

through his ongoing state criminal proceedings, and if convicted, through direct appeal and exhaustion of state court remedies, and then, a federal habeas petition rather than a civil complaint under 42 U.S.C. § 1983.  See Preiser v. Rodriguez, 411 U.S. 475 (1973).

B.  Malicious Prosecution

Next, it seems that Shihadeh is asserting a claim of malicious prosecution with respect to his three charges for the murder of Marvin Weinberger.  In order to state a prima facie case for a § 1983 claim of malicious prosecution pursuant to the Fourth Amendment, a plaintiff must establish the elements of the common law tort as it has developed over time, Hilfirty v. Shipman, 91 F.3d 573, 579 (3d Cir. 1996), and that there has been a seizure, Gallo v. City of Philadelphia, 161 F.3d 217, 222 (3d Cir. 1998); Luthe v. Cape May, 49 F. Supp.2d 380, 393 (D.N.J. 1999).  Under New Jersey law, the common law tort elements of a malicious prosecution action arising out of a criminal prosecution are:  (1) the criminal action was instituted by the defendant against the plaintiff, (2) it was actuated by malice, (3) there was an absence of probable cause for the proceeding, and (4) the criminal proceeding was terminated favorably to the plaintiff.  Lind v. Schmid, 67 N.J. 255, 262 (1975).  A plaintiff attempting to state a malicious prosecution claim must also allege that there was "'some deprivation of liberty consistent

20

with the concept of seizure.'" <u>Gallo</u>, 161 F.3d at 222 (quoting <u>Singer v. Fulton County Sheriff</u>, 63 F.3d 110, 116 (2d Cir. 1995)); <u>see</u> <u>Albright v. Oliver</u>, 510 U.S. 266 (1994).  Ordinarily, the statute of limitations on a malicious prosecution claim begins to run on the date plaintiff receives a favorable termination of the prior criminal proceeding.  <u>Heck v. Humphrey</u>, 512 U.S. 477, 489 (1994).

Here, there is no doubt that any claim with respect to malicious prosecution in 1973 are long time-barred.  Shihadeh was no-billed on the murder charges in 1973, and he failed to bring any action until more than 30 years after the claims had accrued upon favorable termination of the criminal proceedings.  Further, with respect to the re-opening of this case in 2005, Shihadeh cannot sustain a malicious prosecution claim at this time because the criminal proceeding in that matter has not yet terminated favorably to him.  Therefore, the malicious prosecution claim as to the 1973 charges should be dismissed as time-barred, and the claim as to the 2005 charges should be dismissed without prejudice for failure to state a claim at this time.

C.  <u>Police/Official Misconduct</u>

Shihadeh also alleges that his right to due process was violated by defendants based on their misconduct in interrogating

plaintiff and investigating the matter.[5]  This claim relates to the investigation conducted in May through October 2005. Shihadeh asserts that defendants used lying tactics, interviewed him for a length of time while plaintiff was not feeling well, threatened action against his son, pushed plaintiff in his chair, and interrogated plaintiff without his counsel present.  He also states that the detectives interviewed his ex-wife for a period of time, but she has made no claim in this regard, and there are no allegations that she suffered any injury from the single interview.

This claim basically asserts that Shihadeh was subjected to coercive interrogation; however, the police tactics or alleged misconduct did not result in a confession or other self-incrimination by plaintiff.  In fact, Shihadeh admits that he declined to talk with the detectives, asserting his right to counsel.  Moreover, there are no allegations of harm or injury to plaintiff resulting from the coercive interrogation.  Thus, the question for this Court is whether such a claim under these circumstances may constitute a violation of substantive due process.

The Supreme Court has observed that "certain interrogation techniques, either in isolation or as applied to unique

---

[5]  Any claim of misconduct or coercive investigation relating to the 1973 incidents are clearly time-barred and will be dismissed accordingly.

22

characteristics of a particular suspect, are so offensive to a civilized system of justice that they must be condemned under the Due Process Clause of the Fourteenth Amendment." Miller v. Fenton, 474 U.S. 104, 109 (1985).  The Court further held that, under some circumstances, coercive interrogation alone may violate a suspect's right to substantive due process, even when no self-incriminating statement is used against the person interrogated.  See Chavez v. Martinez, 538 U.S. 760, 780 (2003).  However, a due process violation will be recognized only where the specific conduct alleged rises to the level of coercive interrogation that "shocks the conscience."  County of Sacramento v. Lewis, 523 U.S. 833, 846-47, n. 8 (1998)(substantive due process rights are violated only when "the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the conscience").

The Third Circuit has held that to establish a violation of substantive due process rights, the action alleged must be "so ill-conceived or malicious that it shocks the conscience." Miller v. City of Philadelphia, 174 F.3d 368, 375 (3d Cir. 1999)(quoting Lewis, 523 U.S. at 846).  Mere negligence is not sufficient to meet this standard.  Lewis, 523 U.S. at 847.  The standard often used by the Supreme Court to determine whether an action has reached that level is the "deliberate indifference" standard.  Id., 523 U.S. at 851.  The Third Circuit acknowledged

that the meaning of this "shocks the conscience" standard varies depending on the factual context of the case.  Miller, 174 F.3d at 375; see also United Artists Theatre Circuit, Inc. V. Township of Warrington, 316 F.3d 392, 399-400 (3d Cir. 2003); Nicini v. Morra, 212 F.3d 798, 810 (3d Cir. 2000)("A plaintiff seeking to establish a constitutional violation must demonstrate that the official's conduct 'shocks the conscience' in the particular setting in which that conduct occurred").

Typically, "conscience shocking" provides relief for physical abuse.  See Rochin v. California, 342 U.S. 165 (1952)(due process violated when evidence obtained by subjecting the suspect to an involuntary stomach pump).  Some courts have suggested that "conscience shocking" behavior must be either physically intrusive or violent, or strike at the basic fabric of a protected relationship, such as a parent-child relationship. See Cruz-Erazo v. Rivera-Montanez, 212 F.3d 617, 623 (1st Cir. 2000).  For instance, in the few cases where interrogation alone has supported a conscience-shocking claim, there have usually been at least some allegations of physical force or abuse.  In Chavez, the Supreme Court remanded the case to the Ninth Circuit to determine whether a suspect had a "shocks the conscience" claim against police for conduct during the interrogation.  The Ninth Circuit allowed the claim based in part on implications of physical abuse allegations that the officer had interfered with

24

the medical treatment of the plaintiff while he screamed in pain. Martinez v. City of Oxnard, 337 F.3d 1091, 1092 (9th Cir. 2003).

In this case, the Court is hard pressed to find that the interrogation tactics used by the detective defendants rose to the level of a coercive interrogation that shocks the conscience and resulted in a federal constitutional deprivation. Shihadeh was not interrogated for hours. He was not physically abused or harmed during the interrogation sessions, although he does state that he was pushed back into his chair when he tried to leave the room, and was weak during the first session in May 2005.[6] Shihadeh was already in custody on unrelated charges. Moreover, plaintiff invoked his right to counsel, and did not feel compelled to talk to the detectives. No confession or admissions were elicited from plaintiff. Thus, the Court finds that the interrogations were not so egregious or outrageous, that it may be fairly said to shock the contemporary conscience.

Indeed, the defendants' tricks to get a confession from Shihadeh arguably are not even coercive. See United States v. Bezanson-Perkins, 390 F.3d 34, 41 (1st Cir. 2004)("trickery is not automatically coercion"). Thus, the alleged conduct of the police interrogation in this case falls more in line with those cases in which the police conduct is untoward or upsetting, yet

---

[6] Shihadeh states that he almost passed out, but actually did not. Shortly afterward, the interview concluded.

does not rise to the level that shocks the conscience.  See
Lewis, 523 U.S. at 855; Tinker v, Beasley, 429 F.3d 1324, 1329
(11th Cir. 2005).  Therefore, this claim will be dismissed for
failure to state a claim.

D.  Prosecutorial Misconduct

Finally, Shihadeh appears to be asserting a claim of
prosecutorial misconduct against defendant Fantuzzi, in failing
to provide requested discovery to Shihadeh's counsel in his state
criminal proceedings.  This is a discovery dispute in an ongoing
state proceeding, and as such, is properly raised in that
proceeding.  The Court must refrain from intervening in the
matter, pursuant to Younger, while the state criminal proceeding
is pending.  See this Opinion, supra, at pp. 18-19.  Accordingly,
this claim will be dismissed without prejudice.

V.  CONCLUSION

For all of the reasons set forth above, plaintiff's claims
of false arrest/imprisonment, malicious prosecution, and coercive
interrogation with respect to the 1973 incidents will be
dismissed with prejudice as time-barred.  Further, plaintiff's
false arrest/imprisonment claim, his malicious prosecution claim,
and his claim of prosecutorial misconduct will be dismissed
without prejudice for failure to state a cognizable claim at this
time.  Finally, the coercive interrogation claim relating to the
2005 investigation will be dismissed with prejudice as to all

defendants, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and
1915A(b)(1), for failure to state a claim.  An appropriate Order
follows.

 /s/ Jose L. Linares           
JOSE L. LINARES
United States District Judge

Dated: April 12, 2006

27